*Coffin*, for the plaintiff, cited *Emerson* v. *Towle*, 5 Greenleaf, 197.

## FREDERIC S. ALLEN *versus* The Inhabitants of TAUNTON.

A town is authorized to appropriate money for the repair of fire-engines used for the purpose of extinguishing fires therein, whether they belong to the town, or were purchased by private subscription.

Where a contract was made in pursuance of a vote of a town, but before the contract was performed the vote was rescinded, it was *held*, that the person with whom the contract was made, was not affected by the rescission, not having had notice thereof.

But whether notice would have made any difference, *quære.*

ASSUMPSIT to recover the sum of $ 333·24, for work and labor performed by the plaintiff on certain fire-engines, and for materials furnished therefor.

By an agreed statement of facts it appeared, that at a meeting of the inhabitants of Taunton, on the 4th of May, 1835, a committee was appointed with authority to expend a sum, not exceeding $ 500, in repairing the fire-engines in question, &c.; that the committee contracted with the plaintiff for the performance of the labor and furnishing the materials, and that the work was begun before the 25th of that month ; and that at a

41*

meeting of the inhabitants on that day the vote appointing the committee was reconsidered, and a committee was chosen to prevent the payment of the money appropriated thereby.

The engines in question were purchased several years before, by means of a subscription made by private citizens of the town, and engine companies were formed, who had had the care and management of them ever since ; and the engines had been used by such companies whenever occasion required.

If the plaintiff was entitled to recover, the defendants were to be defaulted ; otherwise, the plaintiff was to be nonsuited.

*Oct. 25th.* *Colby,* for the plaintiff, cited *St.* 1796, *c.* 88, § 2, 3 ; Revised Stat. *c.* 18, § 5, 7 ; *St.* 1785, *c.* 75, § 7 ; *Stetson* v. *Kempton,* 13 Mass. R. 272 ; *Woodbury* v. *Hamilton,* 6 Pick. 101 ; *Willard* v. *Newburyport,* 12 Pick. 227 ; *St* 1785, *c.* 42, § 3.

*Pratt,* for the defendants, cited *St.* 1785, *c.* 75, § 7 ; *Stetson* v. *Kempton,* 13 Mass. R. 272 : *Woodbury* v. *Hamilton,* 6 Pick. 101.

*Oct. 27th.* DEWEY J. delivered the judgment of the Court. The principal question arising in the present case, concerns the authority of the defendants to raise and appropriate money for the purchasing and repairing fire-engines. The power of towns to appropriate money and assess taxes therefor, as is well understood, is a power wholly derived from our statutes. The earliest statute enacted after the adoption of the constitution, which gives any general outline of the power of towns in this respect, is the *St.* 1785, *c.* 75, § 7, which authorizes towns to grant all such sums of money as they shall judge necessary for the support and maintenance of the ministry, schools and the poor, and other necessary charges arising within the town. That this power to raise and appropriate money is a limited one, has always been admitted ; but the question where the limit is, has been found somewhat difficult to settle with entire precision. While this Court have, on the one hand, carefully guarded the rights of the members of municipal corporations against ex penditures foreign to the duties of towns, they have been disposed to give such a construction to the laws on this subject, as would fully enable towns to discharge all those municipal duties, which properly devolve on them, and in the discharge of which all the citizens of a town are interested.

But it is not every object which receives the approbation of the town, nor every object which might be thought beneficial even by the united vote of its citizens, that would justify a grant of money by the town and an assessment upon the inhabitants, as is apparent from the opinion of the Court in the case of *Stetson* v. *Kempton*, 13 Mass. R. 272 ; where an appropriation was made by the town to furnish aid and coöperation in the general defence against anticipated attacks of a foreign government. In the more recent case of *Parsons* v. *Goshen*, 11 Pick. 396, where money was granted by a town in aid of the construction of a county road, at a time when by law the whole expense of making new highways was to be borne by the counties, though the money had been expended under the direction of a committee of the town, yet the town was holden not to be responsible for the expenditures, the contract and appropriation being beyond the authority of the town. On the other hand, the power of towns to raise money and to enter into contracts obligatory on them, has ever been held to include all subjects of general interest which could be reasonably embraced within the provisions of *St.* 1785, *c.* 75, § 7. Such was the doctrine in the case of *Willard* v. *Newburyport*, 12 Pick. 227. The immediate question there arose upon the liability of the town for expenses incurred in repairing and regulating clocks used for the benefit of the citizens of the town generally. The authority of the town to grant money for such purposes was sustained by the Court.

In determining whether the subject matter is within the legitimate authority of the town, one of the tests is, to ascertain whether the expenses were incurred in relation to a subject specially placed by law in other hands. This test was applied in the cases of *Stetson* v. *Kempton*, and *Parsons* v. *Goshen*, before cited. It is a decisive test against the validity of all grants of money by towns for objects liable to that objection, but 't does not settle questions arising upon expenditures for objects not specifically provided for. In such cases the question will still recur, whether the expenditure was within the jurisdiction of the town. It may be safely assumed, that if the subject of the expenditure be in furtherance of some duty enjoined by statute, or in exoneration of the citizens of the town

from a liability to a common burden, a contract made in reference to it will be valid and binding upon the town.

In the application of these principles to the present case, it may be useful to consider briefly the course of legislation in relation to the duties of towns to make provision for the extinguishment of fires, and also their liability for losses that may be occasioned thereby.

By the *St.* 1785, *c.* 42, § 1, it was enacted, " that the selectmen of such towns in this Commonwealth as are or may be provided with a fire-engine or engines, be, and they hereby are empowered, if they judge it expedient, to appoint a suitable number of persons (not exceeding fifteen) for engine men." That the engines described in this statute as above quoted, are such as belong to the towns, is quite apparent from the third section of the same statute, where further provision is made for engines that may be the property of individuals, and authority is given to the selectmen " to appoint engine men with the same privileges and subject to the same regulations as though the said engines were the property of the town." The *St.* 1805, *c.* 82, § 3, provides " that selectmen may select from the engine men a number of men from each engine, whose duty it shall be, under the direction of firewards, to attend fires with axes, fire-hooks, ladders, &c." The *St.* 1801, *c.* 29, provides a penalty for " maliciously injuring any engine, or any of the apparatus thereto belonging, prepared by any *town*, society or persons, for the extinguishment of fire." The *St.* 1834, *c.* 50, § 2, enacts, that towns may allow engine men a sum equal to the poll tax. The provisions of *St.* 1796, *c.* 88, are perhaps more important, as authorizing the appointment of firewards, giving authority to take down or demolish any building in order to prevent the further spreading of fire, and providing an indemnity for persons whose houses may be thus taken down, to be paid by the inhabitants of the town in which the fire shall happen.

It is very apparent from these enactments, that the prevention of damage by fire is one of those objects affecting the interest of the inhabitants generally, and clearly within the scope of municipal authority. With such an onerous liability imposed on them, it would be strange indeed if they had not the au-

thority to take all necessary measures to secure themselves against losses by such means.

That they have this power, we do not doubt, and that it is properly exercised in the procuring fire-engines, is equally obvious.

It was further objected, that the pla.ntiff was not entitled to recover, because the expenditures were incurred in repairing engines which were the property of individuals. But if the town has authority to purchase engines, they may also unite with individuals, and in such proportions as to interest, as may be equitable and just between the parties. Such an arrangement may often be found convenient, when, from the location of the inhabitants, any considerable number of them may not fully participate in all the benefits.

It was also objected, that the authority given by the town of Taunton the 4th of May, 1835, to act on this matter, was revoked by the subsequent vote of the 25th of May. It was so in form. Such was the vote of the town ; and, if full effect had been given to that vote by communicating it to the plaintiff immediately, a question might have arisen as to the extent .of the liability of the defendants. If the work had not been commenced by the plaintiff, the contract might perhaps have been repudiated by the defendants, making good all damages ; but however that might be, no such question arises in the present case, as it does not appear that any notice was ever given to the plaintiff, of the vote of the 25th of May, 1835 ; and he is not affected by it.

*The defendants are to be defaulted.*